UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCHOOL BOARD OF MANATEE
COUNTY, FLORIDA,

    Plaintiff,

v.        Case No. 8:08-cv-1435-T-33MAP

L.H., a Minor by and through her
parents, D.H. and B.H., individually,
and as parents and next friends of L.H.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is an action by the School Board for judicial review of an administrative decision under the Individuals with Disabilities Education Act ("IDEA") finding the parents of L.H. have the right to have a privately-retained psychologist conduct in-school observations of their emotionally handicapped child as part of an independent educational evaluation ("IEE").[1] In turn, the parents have leveled counterclaims against the School Board under § 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, 42 U.S.C. § 1983, and the Florida Educational Equity Act (doc. 11). The School Board has moved under Rules 12(b)(1) and 12(b)(6) to dismiss these counterclaims on a variety of grounds (doc. 17). For the reasons stated, I find the parents have exhausted their administrative remedies but have failed to state a claim pursuant to 42 U.S.C. §

---

[1] The IDEA was amended by the Individuals with Disabilities Education Improvement Act of 2004, which took effect July 1, 2005. References made to the IDEA are to the amended version. *See Dekalb County School Dist. v. J.M.*, 2009 WL 2351725, at *1 n. 1 (11th Cir. July 31, 2009) (*per curiam*).

1983.[2]

*A. Standard of Review*

Both sides have incorporated or attached parts of the administrative record to their pleadings. For example, the School Board's complaint and the parents' counterclaims attach or incorporate the ALJ's final administrative order. *See* doc. 1, Exh. A; doc. 11, Counterclaim, ¶ 45. The parents have appended other parts of the administrative record (including a transcript of the administrative hearing) to their response to the School Board's motion to dismiss. Typically, a court's consideration of matters outside the complaint (or counterclaims) converts a 12(b)(6) motion into a summary judgment motion. Fed. R. Civ. P. 12(d); *Garcia v. Copenhaver, Bell & Associates, M.D.'s P.A.*, 104 F.3d 1256, 1266 n. 11 (11th Cir. 1997); *Hendrix v. Snow*, 170 F. App'x 68, 75 (11th Cir. 2006) (*per curiam*). That is not the case here. Because the administrative decision is attached as an exhibit to the complaint and incorporated in the counterclaims, that exhibit becomes part of those pleadings for Rule 12(b)(6) purposes. *See* Fed. R. Civ. P. 10(c); *Solis-Ramirez v. U.S. Dep't of Justice,* 758 F.2d 1426, 1430 (11th Cir. 1985). This same result applies to the administrative record attached to the parents' response because those documents are central to the claims and are undisputed.[3] *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). This result is particularly appropriate in IDEA cases as that scheme expressly provides that courts are to receive the records of the administrative proceedings in a civil action brought by an aggrieved party in a state court or federal district court. 20 U.S.C. §

---

[2] The district judge referred the matter for a report and recommendation (doc. 23). *See* 28 U.S.C. § 636 and Local Rule 6.01.

[3] The parents are counter-plaintiffs as a result of filing their counterclaim at issue in this motion to dismiss, so the analysis is applicable in this context.

1415(i)(2)(C)(i); *Dekalb County School Dist. v. J.W.M.*, 445 F.Supp.2d 1371, 1378 n. 8 (N.D. Ga. 2006) ("In an appeal from an administrative hearing in which the hearing record, including the transcript, must be included with the initial pleading seeking review, there can be no genuine dispute as to the authenticity of the hearing transcript." (internal citation omitted)). In short, a Rule 12(b)(6) standard of review applies.[4]

Under the Rule 12(b)(6) standard, the pleadings are construed broadly, and the allegations are viewed in the light most favorable to the non-moving party taking its factual allegations as true and accepting all reasonable inferences therefrom. *Watts v. Florida Intern. University*, 495 F.3d 1289, 1295 (11th Cir. 2007). All that the rules require is that the claimant set forth a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to provide the other party with fair notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). While the counterclaim does not require detailed factual allegations, the defendant is obligated to provide as grounds for entitlement to relief more than labels and conclusions; furthermore, a formulaic recitation of the elements of a cause of action will not do. *See Twombly*, 550 U.S. at 555. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations are true. *Id.* (internal citations omitted). Basically, the counterclaim must set forth enough facts to state a claim for relief that is plausible on its face. *See id.* at 570. When, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action, the court may dismiss a complaint, or counterclaim, under Rule 12(b)(6). *See Marshall County Bd. of Educ. v. Marshall*

---

[4] Rule 12(b)(6) applies equally to counterclaims. *Marous Brothers Const., LLC v. Alabama State University, et al.*, 2008 WL 370903, at *1 (M.D. Ala. February 11, 2008).

*County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).[5]

### B. IDEA framework

The administrative scheme that provides the backdrop to the parties' claims is intricate; hence, an outline of the IDEA's framework offers context for understanding what follows. The IDEA, successor to the Education of the Handicapped Act ("EHA"), provides "an ambitious federal effort to promote the education of handicapped children." *M.M. ex rel C.M. v. Sch. Bd. of Miami-Dade County*, 437 F.3d 1085, 1094 (11th Cir. 2006) (*per curiam*) (quotation and citation omitted). Two of the primary purposes of the IDEA are "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living" and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A) and (B). To further these objectives, the

---

[5] Some further discussion regarding the appropriate standard of review is warranted. The School Board asserts the parents failed to administratively exhaust their counterclaims as required by the IDEA. This omission, the School Board argues, divests this Court of subject matter jurisdiction regarding those claims. *See* doc. 17, p. 8 and doc. 19, pp. 9-11. Accordingly, the School Board also moves to dismiss the counterclaims under Rule 12(b)(1). The School Board's jurisdictional approach is not without authority in the Eleventh Circuit as the circuit has rendered conflicting opinions on the matter. *Babicz v. Sch. Bd. of Broward County*, 135 F.3d 1420 (11th Cir. 1998) (*per curiam*) (affirming the district court's dismissal of the complaint for lack of subject matter jurisdiction where the plaintiffs failed to exhaust their administrative remedies under the IDEA); *J.P. v. Cherokee County Bd. of Educ.*, 218 F. App'x 911 (11th Cir. 2007) (*per curiam*) (same); *compare N.B. by D.G. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996) (*per curiam*) ("The exhaustion requirement, however is not jurisdictional and therefore is not to be applied inflexibly." (quotation and citation omitted)); *M.T.V. v. Dekalb County Sch. Dist.*, 446 F.3d 1153 (11th Cir. 2006) (finding failure to exhaust administrative remedies as a prerequisite to filing the action and affirming district court's dismissal for failure to exhaust administrative remedies pursuant to Fed. R. Civ. P. 12(b)(6)). To the extent that these decision conflict, the application of the circuit's prior precedent rule would suggest that exhaustion is not jurisdictional and Rule 12(b)(6)'s standard of review applies. *Walker v. Mortham*, 158 F.3d 1177, 1188-89 (11th Cir. 1998).

4

IDEA guarantees that students with a disability receive a free and appropriate public education ("FAPE") through a panoply of special education services, including the right to an individualized education program ("IEP") as defined in 20 U.S.C. § 1414(d).[6] *J.P.*, 218 F. App'x at 912.

To provide a child with a FAPE, the public agency formulates and develops an IEP during a meeting between the parents and school officials, collectively known as the IEP Team. 20 U.S.C. § 1414(d)(1)(A) and (B). As part of an initial evaluation or any reevaluation, the IEP Team and, where appropriate, other qualified professionals must review existing evaluation data on the child. This data includes: evaluations and information provided by the child's parents; current classroom-based, local, or State assessments; classroom-based observations; and observations by teachers and related services providers. 20 U.S.C. § 1414(c)(1)(A). "During the IEP-development process, parental involvement is critical; indeed, full parental involvement is the purpose of many of the IDEA's procedural requirements." *M.M.*, 437 F.3d at 1095; *see also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005) ("The core of the statute, however is the cooperative process that it establishes between parents and schools. . . . Parents and guardians play a significant role in the IEP process."); *see also Doe v. Ala. State Dep't of Educ.*, 915 F.2d 651, 661 (11th Cir. 1990) (noting that it is beyond dispute that full parental involvement in the handicapped child's education is the purpose of many of the EHA's procedural requirements).

The IDEA safeguards a parent's collaborative input with a detailed procedural framework.

---

[6] The Act defines a "free appropriate public education" as "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d)." 20 U.S.C. § 1401(9), (26), and (29).

*See* 20 U.S.C. § 1415. The public agency must ensure that a parent of a child with a disability participates as a member of any group that makes decisions on the educational placement of the parent's child. 34 C.F.R. § 300.501(c)(1). Parents must receive an opportunity to examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a FAPE to such child, and to obtain an IEE of the child. 20 U.S.C. § 1415(b); *see also* 34 C.F.R. § 300.502(a).

Federal regulations define an IEE as an evaluation conducted by a qualified examiner who is not employed by the public agency responsible for the education of the child in question. 34 C.F.R. § 300.502(a)(3)(i). Parents of a child with a disability have the right to an IEE at public expense if the parent disagrees with an evaluation obtained by the public agency subject to the conditions set forth in the regulations. 34 C.F.R. 300.502(b)(1). If the parents request an IEE at public expense, the public agency must either file a due process complaint to request a hearing to show its evaluation is appropriate, or the public agency must ensure that an IEE is provided at public expense unless the public agency shows in a due process hearing that the evaluation obtained by the parent did not meet agency criteria. 34 C.F.R. § 300.502(b)(2)(i)-(ii). Basically, "[i]f the public agency files a due process complaint notice to request a hearing and the final decision is that the agency's evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense." 34 C.F.R. § 300.502(b)(3).

The IDEA provides further procedural safeguards that "permit parental involvement in all matters concerning the child's educational program and allows parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate." *N.B.*, 84 F.3d at 1378. Specifically, the IDEA allows any party to present a complaint with respect to any matter relating

to the identification, evaluation or educational placement of a child with a disability or the provision of a FAPE to a child with a disability. 20 U.S.C. § 1415(b)(6). After presenting a complaint, a parent or local educational agency seeking to challenge any matter relating to the provision of a FAPE may request an impartial due process hearing before an ALJ. *See* 20 U.S. C. § 1415(f); *Doe*, 915 F.2d at 655.[7] The party requesting the due process hearing may not raise issues at the hearing that the party did not raise in the notice filed under subsection 20 U.S.C. § 1415(b)(7), unless the other party agrees otherwise. 20 U.S.C. § 1415(f)(3)(B). Following the due process hearing, an aggrieved party may appeal the decision of the administrative hearing officer to a state court or a federal district court, where the judge will receive the records of the administrative proceedings and may hear additional evidence if necessary. 20 U.S.C. § 1415(i)(2)(A) and (C); *see CP v. Leon County School Bd. Fla.*, 483 F.3d 1151, 1153 (11th Cir. 2007) (citing *Doe*, 915 F.2d at 655); *see also Weiss by Weiss v. School Bd. of Hillsborough County*, 141 F.3d 990, 992 (11th Cir. 1998) ("Although the district court's review is in the nature of an appeal, the court is not limited to the administrative record, nor must the court remand if it determines that a remedy was inappropriately denied. The IDEA specifically provides that the court may take additional evidence and may fashion relief that the court deems appropriate.").

    C. Procedural History

        *1. events leading up to the administrative action – the IEE and the IEP*

At the time of her administrative hearing in February 2008, L.H. was an emotionally handicapped 11-year-old elementary student with Asperger's Syndrome and Sensory Integration

---

[7] In Florida, the appropriate administrative procedure is to request a due process hearing before a state ALJ in the Florida DOAH. Fla. Stat. § 1003.57(1)(b).

Dysfunction. Children with Asperger's Syndrome present with significant impairments in social interaction and relating to others. Often they have problems reading body language, interpreting social cues, and can have serious problems with pragmatic language (knowing how to use language effectively). It is not uncommon for such children to have behavioral difficulties and to experience anxiety and depression.

In January 2007, with a transfer to a new school and the need to adjust to a new environment, L.H. experienced behavioral problems. Nonetheless, her parents were initially satisfied with the collaborative IEP developed for their child. It allowed education in regular education classrooms with pull-out services for occupational therapy, speech therapy, counseling, and the use of a certified behavioral specialist. L.H. successfully adjusted, although the semester was not without challenges. Her parents assigned their child's success largely to the efforts of her assigned behavioral specialist. The next school year, unfortunately, did not go as smoothly.

With the beginning of the new school year (2007-2008), L.H. exhibited serious behavioral problems. As the year progressed, her conduct deteriorated; so did her home life. She vomited, complained of headaches and stomach aches, slept three to four hours after arriving home from school, and had difficulty going to sleep on Sunday nights or a night prior to a school day. Notably, she did not experience these symptoms during the holiday breaks (Thanksgiving and Christmas 2007). Her pediatrician ruled out any physical reasons for these maladies and attributed their cause to stress associated with school. Faced with all this, L.H's parents sought the school's assistance. As a consequence of a collaborative effort between the school and L.H's parents, it was recommended that a functional behavioral assessment would be done. This assessment, which would take several weeks to complete, required in-school observations of L.H. to assist the

8

psychologist or evaluator in developing a hypothesis as to why she behaved inappropriately. The School Board never completed the assessment.

In November 2007, the school's authorities suspended L.H. three times (two in-school suspensions and one out-of-school). Another out-of-school suspension occurred in December. Around this time, L.H.'s parents sought to have an IEE conducted at private expense. Specifically, L.H.'s mother expressed concerns about L.H.'s reported behaviors and repeated suspensions from school and requested their privately-retained psychologist be granted permission to observe L.H. in a classroom setting to determine why L.H. exhibited such conduct and what triggered it. L.H.'s parents wanted to have the IEE performed prior to the scheduled IEP meeting set for late January 2008. The School Board denied the parents' request pursuant to an "unwritten policy" barring all private psychologists and other qualified evaluators not employed by the school district from conducting classroom or across-school-setting observations as part of a student evaluation. That decision prompted L.H's parents to invoke the IDEA's procedural safeguards.

### 2. *the administrative proceedings*

L.H.'s parents requested a due process hearing. In their request they explicitly stated claims pursuant to the IDEA, § 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and the Florida Statutes. Prior to the hearing, the parties stipulated to certain facts: the parents had not sought an IEE at public expense before requesting the due process hearing; the parents were not challenging the appropriateness of L.H.'s IEP or placement; and the issue to be decided was whether L.H.'s parents had the right to have a private psychologist conduct observations of L.H. at school as part of an IEE. After hearing testimony and receiving exhibits, the ALJ issued a forty-four page opinion concluding the parents' right to an IEE included the right for their independent evaluator to conduct reasonable

9

in-school observations of their child. Further, the School Board's "unwritten" policy, which bars private psychologists or other qualified evaluators from conducting in-school observations, regardless of the need or appropriateness of such observations, effectively denied the parents' rights to an IEE. Accordingly, the ALJ ordered the School Board to permit the privately-retained psychologist to conduct an in-school observation of L.H. for at least two hours including several school settings as deemed necessary by the privately-retained psychologist. To allay the concerns expressed by the School Board at the hearing, the ALJ also directed the School Board and the privately-retained psychologist to agree on reasonable and appropriate guidelines and protocols for the subject observations and suggested the School Board consider requiring the privately-retained psychologist affirm in writing that she would respect the confidentiality of all students (doc. 1, Exh. A).

### *3. the complaint, counterclaims, and the School Board's motion to dismiss*

Aggrieved by the ALJ's decision, the School Board filed this action for federal judicial review. The parents counterclaimed alleging the same factual themes presented at the administrative hearing: LH's behavior had deteriorated during the school year; her behavioral plan needed updating, particularly given L.H.'s increasing number of school suspensions; the parents had retained the services of a private psychologist in an effort to aid their child; the School Board had not been immediately forthcoming in answering the psychologist's observation questionnaires; and the School Board had rejected their request to allow the parents' psychologist to observe L.H. at her school. That decision, according to the parents, caused L.H. to suffer a loss of educational benefits. And the School Board's refusal to accommodate L.H. by making reasonable modifications to its existing policies and procedures violated § 504 fo the Rehabilitation Act (Count II) , Title II of the ADA

(Count III), and the Florida Educational Equity Act (Count V). The parents also sued under the IDEA for attorney's fees and costs as the prevailing party at the administrative level (Count I). *See* 20 U.S.C. § 1415. The School Board now moves to dismiss these counterclaims on several grounds: the parents failed to exhaust their administrative remedies or to plead exhaustion of remedies; the counterclaims fail to state a cause of action; § 1983 does not provide a remedy for alleged violations of the IDEA; and the parents have employed an improper procedural mechanism for seeking attorney's fees.

    *D. Discussion*

        *1. exhaustion of administrative remedies*

In the typical IDEA case, the exhaustion question is easy to answer because the aggrieved party, usually the parents, bypasses the administrative scheme altogether. *See e.g.*: *N.B., supra*; *M.T.V., supra*; *J.P., supra*. That did not happen here. The parents requested an administrative hearing; their detailed administrative request basically mirrors their counterclaims; and they ground their counterclaims on the core facts adduced at the administrative hearing. Nonetheless, the School Board contends the parents' administrative efforts were wanting. For example, they never raised in the administrative forum any issues relating to the identification, evaluation, educational placement, or the provision of a FAPE. And despite the narrow issue administratively decided, the parents counterclaims go beyond that issue by including allegations relating to suspensions L.H. received, ridicule L.H. experienced, the failure to implement a behavior plan with respect to L.H., the allegedly inappropriate IEP, and the violation of L.H.'s rights relating to the School District's policies and procedures. Lastly, they have failed to plead that they exhausted their administrative remedies. I find the School Board's arguments mischaracterize the evidence presented to the ALJ and misconstrue

11

the legislative scheme's exhaustion requirement.

The starting point for interpreting a statute is the language of the statute itself. *Consumer Product Safety Comm. v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980). Section 1415(l) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the American with Disabilities Act, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Stated differently, any party "who wants relief that is available under the IDEA must use the IDEA's administrative system, even if he invokes a different statute." *Babicz*, 135 F.3d at 1422 n. 10.[8] As the Eleventh Circuit has repeatedly emphasized, "[t]he philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities." *N.B.*, 84 F.3d at 1378 (quotation and citation omitted).

This administrative review prerequisite is technically grounded. Namely, the scheme favors

---

[8] The regulations implementing the IDEA incorporate this language: *See* 34 C.F.R. § 300.516(e) ("Nothing in this part restricts or limits the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under these laws seeking relief that is also available under section 615 of the Act, the procedures under §§ 300.507 and 300.514 must be exhausted to the same extent as would be required had the action been brought under section 615 of the Act."); *see also* Fla. Admin. Code 6A-6.03311(9)(w) ("Nothing in this rule restricts or limits the rights, procedures, and remedies available under the U.S. Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of students with disabilities, except that before the filing of a civil action under these laws seeking relief that is also available under the procedures [*sic*] safeguards available under the IDEA, the procedures related to due process hearings must be exhausted to the same extent as would be required had the action been brought under the IDEA").

the administrative process before judicial review for the same reasons applied to other specialized disciplines where prior administrative review is a must: the exercise of agency discretion and the benefit of its expertise in the matter; the full development prior to court review of both technical issues and the factual record; the prevention of any deliberate disregard and circumvention of agency procedures established by Congress; and the avoidance of unnecessary judicial decisions by giving the agency the first opportunity to correct any error. *Id.* at 1378-1379.[9] The parents adhered to this administrative process, as § 1415(l) demands, before making their counterclaims.[10]

In keeping with the development of a factual record at the administrative level, which is a goal of administrative review and a reason for the exhaustion requirement, the ALJ allowed the parents to present extensive testimony and evidence regarding L.H.'s suspensions and behavioral issues, the possible causes and alleged effects of those suspensions and behavioral issues, behavioral assessments performed, procedures employed for assessments, IEPs, and other matters related to an IEE.[11] *See* doc. 1, Exh. A and doc. 20. Essentially, the record shows the parents filed an

---

[9] The only exception to this exhaustion prerequisite is where resort to the administrative remedies would prove futile or inadequate. *N.B.*, 84 F.3d at 1379.

[10] I recognize that the School Board challenges the correctness of the ALJ's decision to afford the relief the parents requested – observations at the school by a privately retained psychologist as part of an IEE. That issue, which is the subject of the School Board's motion for summary judgment, is before the district judge for consideration.

[11] This case is distinguishable from the facts in *M.T.V., supra*, and *Dekalb County School Dist. v. J.W.M.*, 445 F.Supp.2d 1371 (N.D. Ga. 2006) where the courts found the parents had failed to exhaust their administrative remedies. Unlike in those cases, L.H.'s parents included in their administrative hearing request the current counterclaims. Further, the ALJ accepted testimony and documentary evidence encompassing the claims outlined in that due process hearing request. *See M.T.V.*, 446 F.3d at 1159 (finding failure to establish exhaustion where parents did not allege they ever requested due process hearing on retaliation claims and argued they raised the retaliation issue at other due process hearings); *see Dekalb County School Dist.*, 445 F.Supp.2d at 1375 (raising restraint and deprivation claims during the due process

administrative complaint listing the claims for which they seek redress in this litigation, presented evidence relating to the facts underlying the claims, and obtained a final order from the ALJ relating to the main issue at the heart of their claims. In sum, I find the parents adequately covered their Rehabilitation Act (Count II), ADA (Count III), and the Florida Educational Equity Act (Count V) counterclaims in their due process notice and administratively litigated their factual bases. All these claims arise out of the same operative facts administratively presented; all clearly relate to the issue before the ALJ. *See*: *Doe*, 915 F.2d at 659-60 (concluding the parents of a child with a disability adequately presented issues regarding procedural violations before the hearing officer where the hearing focused on one main issue but the hearing officer allowed evidence regarding the alleged procedural violations); *JSK v. Hendry County School Board*, 941 F.2d 1563, 1570-1571 (11th Cir. 1991) (overruling a district court ruling that parents had failed to exhaust administrative remedies as to one issue because the ALJ had made many determinations of fact and law and had considered other issues as well). Because the parents previously exhausted their administrative remedies through the IDEA procedural process, they may assert their claims under the Rehabilitation Act, ADA, and the Florida Educational Equity Act in this action. 20 U.S.C. § 1415(l); *see also* 34 C.F.R. § 300.516(e).[12]

---

hearing alone without including the claims in either of two separate due process hearing requests insufficient to establish exhaustion of remedies).

[12] The School Board argues the parents failed to specifically plead exhaustion. This argument is not persuasive. The parents specifically allege that all conditions precedent to the relief demanded in their counterclaims have been met or waived (doc. 11, Counterclaim, ¶ 46). Besides, some courts, after considering Supreme Court jurisprudence, have concluded, or at least implied, that the failure to exhaust is an affirmative defense. *See H.B. ex rel. P.B. v. Las Virgenes Unified Sch. Dist.*, 239 F. App'x 342, 344 (9th Cir. 2007); *Coleman v. Newburgh Enlarged City Sch. Dist.,* 503 F.3d 198, 203-04 (2d Cir. 2007); *Mosely v. Bd. of Educ. of the City of Chicago,* 434 F.3d 527, 532-33 (7th Cir. 2006).

*2. 42 U.S.C. § 1983*

In Count IV, the parents assert a claim pursuant to 42 U.S.C. § 1983 alleging "[t]he Board, acting under color of state law, subjected, or caused to be subjected, L.H. to the deprivation of rights, privileges, or immunities secured to her under the IDEA; specifically, the right to an independent educational evaluation at private expense" (doc. 11, Counterclaim, ¶ 61). Further, they allege "[b]y depriving L.H. of the carefully crafted procedural protections under the Act, the Board deprived the Parents of L.H. of their right to meaningful parental participation in the IEP process, deprived the Parents of the ability to seek and obtain appropriate behavioral services for L.H. in the school setting, deprived L.H. of a free appropriate public education on the basis of her disability, and prevented the IEP team from obtaining relevant information to help the child" (*id.* at ¶ 62). Thus, the parents seek redress for the violation of both L.H.'s and their rights with respect to the procedural protections of the IDEA, specifically an IEE at private expense, in the form of compensatory damages as well as declaratory and injunctive relief.[13] They have identified no other constitutional or statutory basis for their § 1983 claim except the IDEA. The School Board contends § 1983 does not provide a remedy for alleged violations of the IDEA. *See Sammons*, 2007 WL 4358266, at *3 (M.D. Fla. December 10, 2007).[14] The parents, citing *Manecke v. School Bd. of Pinellas County, Fla.*, 762 F.2d 912 (11th Cir. 1985), contend a § 1983 action is available for serious procedural violations under the IDEA.

---

[13] Initially, the parents sought punitive damages pursuant to 42 U.S.C. § 1983. In response to the School Board's motion to dismiss, however, they concede the unavailability of punitive damages against the School Board (doc. 19).

[14] *Sammons* relies on the circuit's reasoning in non-IDEA case. *See Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997) (a party may not maintain a § 1983 action in lieu of-or in addition to-a Rehabilitation Act or ADA cause of action if the only alleged deprivation of rights is created by those acts).

15

Unfortunately, the case law is anything but clear with respect to claims brought pursuant to § 1983 to enforce rights provided for under the IDEA.[15]

In *Manecke*, the court determined an action could be brought under § 1983 where the local educational agency deprived a child with a disability of her right to due process by effectively denying her access to the impartial due process hearing. *Manecke*, 762 F.2d at 919. There, the parents of a mentally and emotionally handicapped child sent a letter to the school board's assistant superintendent for exceptional student education expressing concern regarding their daughter's emotionally charged behavior and their desire to place her in an out-of-state residential facility. *Id.* at 914. With the letter, the parents attached a written note requesting a due process hearing on the issue of their daughter's appropriate educational placement. *Id.* The parents also forwarded these documents to the school district's attorney and the Florida Commission of Education. *Id.* Though the assistant superintendent met with the parents informally, no action occurred with respect to their request for a due process hearing. *Id.*. Shortly after the informal meeting, the parents withdrew their daughter from the school and enrolled her in an out-of-state residential facility. *Id.* at 915. The

---

[15] *See C.P. v. Leon County Sch. Bd.*, 2005 WL 2133699, at *4 n. 10 (N.D. Fla. August 27, 2005) (noting even if the plaintiff had established a violation of the IDEA, Rehabilitation Act, or ADA, it was far from clear that § 1983 would provide a remedy, and citing conflicting cases therein); *see E.D. ex rel. Dukes v. Enterprise City Bd. of Educ.*, 273 F.Supp.2d 1252, 1274 (M.D. Ala. 2003) (discussing the applicability of § 1983 in the IDEA context and noting the issue of whether a plaintiff has the ability to use § 1983 as a mechanism to bring an IDEA claim has caused a split among the circuits); *see Sammons v. Polk County School Bd.*, 2007 WL 4358266, at *3-*4 (noting the Eleventh Circuit had not decided whether a party can assert a § 1983 claim based solely on IDEA violations although several other circuits have found they are not allowed and finding the plaintiffs in that case could not assert a § 1983 claim based on violations of the IDEA); *but see J.D. v. Manatee County School Bd.*, 340 F.Supp.2d 1316, 1317 (M.D. Fla. 2004) (stating "[t]his Court has jurisdiction to entertain suits for equitable relief under 42 U.S.C. § 1983. . . . Section 1983 is available as a remedy when a state refuses to grant benefits provided by federal law, including the right to enforce 20 U.S.C. § 1415(j)." (citations omitted)).

parents filed a discrimination complaint with the Office of Civil Rights, which later dropped the charges and ordered the school board to hold a due process hearing. *Id.* The hearing, scheduled more than a year after the parents made their request, was cancelled by the parents. *Id.* In their amended complaint filed in federal district court, the parents alleged the school board failed to provide a timely, impartial due process hearing, which violated their rights under § 1983 and the Rehabilitation Act. The district court dismissed their complaint holding that damages were not recoverable under § 1983 or the Rehabilitation Act. *Id.* at 913. In holding that the district court erroneously dismissed the plaintiffs' § 1983 due process claim, the Eleventh Circuit stated "where, as here, the local educational agency deprives a handicapped child of due process by effectively denying that child access to the heart of the EHA administrative machinery, the impartial due process hearing, an action may be brought under § 1983." *Id.* at 919. The court explicitly cautioned that the holding was narrowly limited to the facts of that case and should not be broadly construed to hold that § 1983 may be employed whenever a procedural deprivation occurs in the context of the EHA, now known as the IDEA. *Id.* at 924.

Here, the parents have not alleged the School Board denied them access to the due process hearing. Indeed, the parties engaged in a timely due process hearing wherein the parents presented extensive testimonial and documentary evidence. *See* doc. 20. Rather, the parents allege they have not had the opportunity to obtain the information necessary to participate in IEP meetings due to the School Board's procedural violations, which has substantially interfered with their right to participate in the IEP process and deprived L.H. of her right to an IEE (doc. 11, Counterclaim, ¶¶ 61, 62). As such, this case more closely resembles *Sammons* than *Manecke*. In *Sammons*, which I find persuasive, the plaintiffs asserted a § 1983 claim based on violations of the IDEA. Namely that

17

the defendant deprived the child with a disability of rights owed to him under the IDEA including, amongst other violations, the right to an independent evaluation at public expense and the right to have the defendant consider an independent evaluation. *Sammons*, 2007 WL 4358266, at *3. Confronted by the circuit's *Manecke* decision, the court nonetheless found that the plaintiffs could not assert a § 1983 claim based solely on violations of the IDEA based on *Holbrook* (*supra* at n. 14). *Id.* at * 5. In short, § 1983 would simply duplicate the relief available under the ADA or the Rehabilitation Act.

Similarly, L.H's parents have alleged only violations of the IDEA as the basis for their § 1983 claim. Moreover, the violation of L.H.'s or the parents' rights for which they seek redress pursuant to § 1983 are subsumed by the School Board's appeal and will be determined after the Court makes a ruling on the merits of the School Board's claims. Accordingly, the parents have failed to state a claim upon which relief can be granted. Thus, the motion to dismiss should be granted as to Count IV.

### 3. attorney's fees

The parents counterclaim (Count I) for an award of attorney's fees incurred in prosecuting their claim in the administrative tribunal. Indeed, a prevailing party in an IDEA administrative action may recover its attorney's fees. *See* 20 U.S.C. § 1415(i)(3)(B)(i); *see Robert v. Cobb County Sch. Dist.*, 279 F. App'x 798, 801 (11th Cir. 2008) (*per curiam*). Notwithstanding, the School Board argues that the parents' claim for attorney's fees should be dismissed because the ALJ's order is not final and, even so, by setting forth a claim for attorney's fees in a pleading rather than a motion, the parents did not employ the correct procedural avenue for an award of attorney's fees. I agree. The ALJ's order cannot be considered a final and an enforceable judgment on the merits entitling the

purported "prevailing party," here the parents, to some sort of relief because it has not altered their legal relationship with School Board. *See Sammons v. Polk County Sch. Bd.*, 2008 WL 2557564, at *3 (M.D. Fla. June 20, 2008); *see also Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (applying this concept to a civil rights plaintiff). The parents, if they succeed on the motion for summary judgment, can recover fees under § 1415 by motion as the School Board contends. *See Dekalb County Sch. Dist.,* 445 F. Supp.2d at 1378-79 (granting motion to dismiss § 1415 counterclaim for attorneys fees; "[t]he correct procedural method for obtaining an award of fees and costs is to file a motion [under Rule 54(d)(2)], not a claim within a pleading.").[16] Accordingly, the School Board's motion to dismiss Count I should be granted.

*E. Conclusion*

For the reasons set forth above, it is

---

[16] Procedurally, this case differs from a case where neither party has appealed the administrative decision thereby leaving the prevailing party with only an independent claim for attorney's fees pursuant to 20 U.S.C. § 1415. In those instances, asserting a claim for attorney's fees in a pleading provides not only the best but the only option for a prevailing party to seek attorney's fees under the statute. *See generally Robert*, 279, F. App'x at 800 (stating "20 U.S.C. § 1415(i)(3)(A) confers jurisdiction over IDEA actions to district courts, and 20 U.S.C. § 1415(i)(3)(B)(i)(I) creates a cause of action for parents to recover attorneys' fees" and finding plaintiffs' claim for attorney's fees in their complaint sufficient to vest the district court with jurisdiction); *Zipperer by and through Zipperer v. Sch. Bd. of Seminole County, Fla.*, 111 F.3d 847, 851 (11th Cir.1997) (stating 20 U.S.C. § 1415(e)(4), now 20 U.S.C. § 1415(i)(3)(B), provides for an independent claim for attorney's fees based on statutory liability); *Matthew V. ex rel. Craig V. v. Dekalb County Sch. System*, 244 F.Supp.2d 1331, 1335 (N.D. Ga. 2003) (parents of a child with a disability who is the prevailing party at the administrative level may bring an independent claim for attorney's fees in a district court after their child prevails before a state ALJ); *but see DeKalb County Sch. Dist.*, 445 F.Supp.2d at 1379 (rather than assert a claim for attorney's fees in a pleading, the party should file a motion seeking an award of fees and costs). Where, as here, the local educational agency has appealed the ALJ's decision, the better course is to require the parents to wait for a determination regarding the School Board's appeal, and thus a determination regarding the parents' status as a prevailing party, and seek attorney's fees by motion once the Court renders its decision.

19

RECOMMENDED:

1. The School Board's motion to dismiss (doc. 17) be GRANTED as to Counts I and IV (the attorneys' fee claim and the § 1983 claim) and DENIED in all other respects.

2. Because the issues presented in the School Board's summary judgment, a matter which is currently before the district judge, are intertwined with the parents' counterclaims, discovery should be stayed until the resolution of that dispositive motion.

IT IS SO REPORTED at Tampa, Florida on August 24, 2009.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc:  The Honorable Virginia M. Hernandez Covington
     Counsel of Record